Rivera, Plaintiff and Appellant, v. Currá, Defendant
and Appellee.

Appeal from the First District Court of San Juan in an
Action for Damages.

No. 3306.—Decided February 3, 1925.

Damages—Negligence of Chauffeur.—A chauffeur who in starting his truck
allows the back part of its platform to extend over the sidewalk and strike
and kill a person walking on the sidewalk is *prima facie* guilty of negli-
gence. It was the duty of the chauffeur and his assistant to ascertain
that the sidewalk was clear.

The facts are stated in the opinion.

*Mr. E. H. F. Dottin* for the appellant.

*Messrs. F. B. Fornaris* and *S. Suau* for the appellee.

Mr. Justice Franco Soto delivered the opinion of the
court.

This is an action for damages brought by the father of
a minor on the basis of the negligence of the defendant's
chauffeur, who while driving a truck struck and killed the
said minor.

The 4th and 5th allegations of the complaint, which de-
scribe the manner in which the accident occurred and im-
pute negligence to the defendant, read as follows:

"IV.—That the plaintiff alleges on information and belief that
on October 30, 1922, at about 3.30 p. m., the said Francisco Currá,
with license No. 10,856, while acting within the scope of his duty
as such employee and servant of defendant José Currá, steered the
said truck so negligently and so near to the sidewalk that the back
part of the platform struck the boy Jorge Rivera who had just left
school and was going to his home at the place called Tras Talleres
in the southern section of the ward of Santurce of this municipality
while the said boy was walking along the western sidewalk of Cerra
Street; and the blow struck by the truck was so unexpected and
violent that the boy fell on the street and the right rear wheel of
the truck passed over his body and killed him instantly.

"V.—The plaintiff alleges that the death of his said son, Jorge
Rivera, was due solely and exclusively to the criminal negligence
of defendant José Currá through his employee and servant, Fran-
cisco Currá, in driving the said truck of the defendant so close to

the sidewalk that it could strike, knock down and kill the said Jorge Rivera, who was walking along the sidewalk without having any reason to apprehend danger of being injured by the said vehicle.''

The defendant pleaded a general denial of the said allegations and alleged as defense that the deceased boy was running from another boy who was pursuing him near that place and in his flight came along the sidewalk where the truck stood, sliding between the chauffeur's assistant, who had just mounted to the platform, and the right rear wheel, losing his balance and falling on the street in front of the said rear wheel which ran over him when there was no possibility of avoiding the accident. The defendant also alleged that the death of the minor was due exclusively to the negligence and lack of precaution of the boy which could in no manner be imputable to the defendant's chauffeur.

The judgment of the court below dismissed the complaint and from it the present appeal was taken, the appellant assigning error in the weighing of the evidence and failure to apply the law and jurisprudence pertinent to the case. The trial judge did not file a statement of the case containing the findings of fact and conclusions of law on which the judgment was based.

The evidence for the plaintiff consisted of the testimony of three witnesses who agreed that the defendant's truck was standing very close to the right sidewalk of Cerra Street, Santurce, headed toward Bayamón; that the minor was going along the sidewalk, and that at the moment when he was passing the platform of the truck and the chauffeur was starting it, steering it out from the sidewalk, the back part of the platform swept over the sidewalk and struck the boy and knocked him into the street where the rear wheel, then in motion, passed over him and killed him.

The defendant called as witnesses the chauffeur, his assistant and Carmelo Fuentes, a carpenter who said that on

the day of the accident he was working in a shop situated opposite the place where the truck stood. The material part of the testimony of this witness was as follows:

"Q.—Do you remember whether anything extraordinary happened in front of the shop on October 30th of last year? A.—I do not remember the date exactly, but I remember that one day at about 3 p. m. while I was working I saw a truck standing. . . Q.—Where was it standing? A.—In front of the shop where I was. It had been standing there for at least an hour and a half. I do not know what it was waiting for, but I know that when the truck was started it struck a boy in the following manner: For some time I had seen the unfortunate boy playing with other boys by throwing oranges and bananas, but when the truck started the boy came running in the same direction in which the truck was starting. . . Q.—In front or behind the truck? A.—Behind the truck. The sidewalk by which the truck was standing is so narrow that when one of the men attempted to mount the truck the boy was already in this position and passed between the legs of the man, collided with the open door of the building and fell to the street, and as the place is so narrow and the truck was so close, and as the truck had already run about a meter, when the boy fell to the righthand side he was struck. . ."

Colón, the assistant, testified in part as follows:

"Then I hung up the block and was climbing up on a board on the mudguard of the car when I saw a shadow. . . When I was climbing up behind I saw the shadow of something coming and saw the boy falling under the wheel. . . Upon seeing his shadow I tried to catch him, but as I was up near the railing with my feet on the board I could not catch him and then I called to Paco: 'Stop, Paco, you have killed a boy!' and he instantly stopped. Q.—Before you were climbing up and saw the shadow, had you seen any boy around that place? A.—No, I had not. . . When I saw him pass under me I was up on the board. . . Judge.—Did you see him come running? A.—I did not see him coming. I saw the position in which he fell and judged that he had come running. . . Q.—Did you see that boy or any other boy around there a few moments before this occurred? A.—No, sir. . . Plaintiff.—Is it not true that the boy had been playing around the truck for some time? A.—No, sir; I did not see him. . . Q.—

Therefore, you did not see the boy until the very moment of his fall? A.—At the very moment when he fell.''

The chauffeur, Francisco Currá, testified in part as follows:

''The truck was standing and I told the assistant to crank it. He did so and thereupon I shifted the gear into first speed. Q.—After cranking the car did the assistant climb on the truck? A.—Yes; he went behind. . . Q.—Shortly before starting or at the time of starting, did you see any boy or boys walking or running around the truck? A.—No; there was nobody there. Q.—Did you notice whether there was any boy running thereabouts? A.—No, sir. . . Q.—Did you hear any call or signal of danger on that day before the accident to the boy? A.—Nothing. Nothing had happened. I proceeded with the car and then heard Pedro Colón say: 'Stop, you have killed some one!' Q.—In what position did you stop the truck when Colón gave you the warning? A.—To the right. Q.—In what relation to the right sidewalk, parallel or oblique? A.—I was going to the street and had to make a turn. . . A.—It was a short distance; about one or two feet. Q.—About one or two feet from the sidewalk? A.—Yes, sir. Q.—When you started, did you start straight down? A.—Yes, sir. I did not have to give a whole turn to the steering wheel; but only turned it slightly. . . Q.—Do you know which part of the truck struck the boy? A.—The rear wheel.''

Such were the pleadings and the evidence in this case. In our opinion the appellant is right in maintaining that the court erred in weighing the evidence and in applying the law.

The evidence of the plaintiff is sufficient and that of the defendant himself shows his fault. The boy was walking or running, as the case may be, along the sidewalk and the testimony of Francisco Currá, the chauffeur, gives us the clue to how the accident occurred. He did not start the truck parallel to the sidewalk. He stated that he turned the truck out towards the center of the street, and this explains mechanically how the back part of the platform swept over the sidewalk and caused the accident. The truck and the curb formed an angle within which the boy must

have fallen as a result of the collision. This renders unimportant the defendant's theory that the collision necessarily would have thrown the boy toward the wall of the shop, inasmuch as that theory would be practicable only if the truck, in being started, had not been turned out into the street. Another detail that may have some influence is that the chauffeur's assistant did not testify that the boy came running and collided with the door of the shop in front of the truck or that after the impact he stood up and then fell under the truck, and it is to be presumed that he had an opportunity to see such things if they actually occurred, as testified to by Fuentes.

The Supreme Court of Iowa, in a very interesting case which we consider in point, said:

"Negligence presupposes a duty to do, or not to do, a particular thing. It was the duty of the driver of the automobile upon the traveled part of the street to control and manage his automobile with such reasonable care and prudence as not to divert or permit its course to be diverted from the main street onto the sidewalk upon which people were standing. Therefore, when it is shown that one who is traveling upon the portion of the street set apart for the use of vehicles, suddenly, and without warning, diverts his course and comes upon the sidewalk upon which people are standing, he violates that duty which he owes to those rightfully on the sidewalk, and thus, prima facie, becomes involved in negligence. This involves the doctrine of res ipsa loquitur, and says: You violated your duty to those rightfully standing upon the sidewalk by allowing your car to be diverted suddenly from its course and to come upon the sidewalk, without warning to those rightfully congregated there. It would be a doctrine against all reason to hold that one driving upon the traveled portion of a street with a dangerous, heavy, and fast-moving vehicle may permit his vehicle to be suddenly diverted from its course upon the traveled street onto and over a sidewalk set apart for the use of pedestrians. It is not going too far to say that such an act, not only involves negligence, but it would have a tendency to show a reckless and wanton disregard to the rights of those upon the sidewalk, and a violation of a palpable duty, which the law enjoins upon every man to so exercise his own right that he may not, unreasonably or unnecessarily,

imperil the safety of others in the exercise of their rights." *Brown v. Des Moines Steam Bottling Works*, 156 N. W. 831.

Did the defendant justify his conduct?

Subdivision (e) of section 9 of the Act to regulate the operation of motor vehicles in Porto Rico, approved April 13, 1916, provides as follows: .

"(e) Every heavy motor vehicle being operated under such conditions that a clear view to the rear is not available to the person operating it shall be provided with a mirror attached in such a way as to enable the operator to obtain such a view, or shall carry a man on the rear to be provided with a signaling device to enable him to signal to the person operating such motor vehicle."

The evidence does not show that the truck had a mirror as prescribed by that statute. It is true that the chauffeur had an assistant, but it was not shown that he had a signaling device by which he could have given warning to the chauffeur when the boy was approaching the truck at the moment when it was starting. If the assistant had performed his duties properly he necessarily would have seen the boy and could have avoided the accident.

The existence of narrow streets and the needs of commercial traffic often require that trucks should come upon the sidewalks, but it was for this very reason and for such cases that the Legislature prescribed the requirements mentioned in section 9 of the Automobiles Act. When a truck is about to start and it is known that the sidewalk will have to be invaded it is the duty of the chauffeur and of the assistant to ascertain that the sidewalk is clear. This is not a case of where a child suddenly leaves a house and falls under an automobile in a manner that can not be avoided. All of the witnesses, both for the plaintiff and for the defendant, said that the boy was on the sidewalk.

With regard to what constitutes contributory negligence on the part of a child of the age of the boy killed in this accident, who was only nine years of age, see the cases of

*Rivera* v. *Successors of López Villamil & Co.*, 29 P.R.R. 257, and *Flores* v. *Successors of Pérez Brothers*, 29 P.R.R. 977. The following doctrine was laid down in the latter case:

"When a dangerous instrumentality like an automobile backs, or is about to back, the driver should first give notice and ascertain that he can do so without injury to persons or property. The law requires trucks to have a lookout, or to have a mirror to show whether anyone is behind, but although in this case the appellants did not comply with the law, mere compliance would not have exempted them from liability."

By reason of all of the foregoing we are of the opinion that the judgment appealed from should be reversed and substituted by another adjudging the defendant to pay to the plaintiff the sum of $1,500, without costs.

*Reversed and substituted.*

Chief Justice Del Toro and Justice Hutchison concurred. Justices Wolf and Aldrey dissented.